## No. 11,560.

### STATE OF LOUISIANA VS. S. L. JAMES.

Under a contract to work the penitentiary on joint account, bearing date in 1868, the officers of that institution were paid by the grantees.

On renewing the contract in 1870 a rental was substituted to half the proceeds, provided under the act of 1868, and the lessees again bound themselves to pay the officers, including the members of the Board of Control, the chaplains and the clerk.

At the second and last renewal of the contract in 1890 the lessees bound themselves to pay the rental stipulated each year of the lease.

The whole question is as to the meaning of the word "net," whether "net" to the lessee or to the State.

The court decides that it gives emphasis to the condition, that the lessor is to receive the amount stipulated "net," and not after deducting amounts paid to the members of the Board of Control, chaplains and clerk, officers whose services were needful to all parties in carrying out the terms and conditions of the contract.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

---

*M. J. Cunningham,* Attorney General, for Plaintiff and Appellee.

---

*Farrar, Jonas & Kruttschnitt* for Defendant and Appellant.

---

The opinion of the court was delivered by

BREAUX, J.   The State brought this suit to recover a balance of six thousand dollars, claimed as due on a contract of lease.

The defendant answers that he had paid all that he owes.

The question relates to the salaries of the Board of Control, chaplains and clerk, and whether they should be paid by the lessee or by the State.

The facts are that under the first contract of lease, bearing date March, 1868, Governor Baker, under the sanction of General Hancock in command of the military department, made a contract they termed one of lease of the penitentiary for a period of five years. The penitentiary was to be worked by the lessees for joint account of themselves and the State—*i. e.*, one-half of the net profits to go the State and one-half to the lessees.   Under the contract the salaries of the Board of Control, chaplains and clerk of the penitentiary should be charged to the current expenses of the institution. The duties of this Board of Control, of the chaplains and clerk are defined in the act.

For their services the five members of the board and the chaplains were to receive one hundred dollars each and the clerk two thousand dollars.

The board was appointed by the Governor, and the chaplains and clerk by the concurrent action of the board and the lessees.   The board and lessees were directed to employ a physician at a salary of six hundred dollars per annum.

The act also authorized the board to furnish books to the convicts, and the lessees were required to furnish each convict with ten dollars and a suit of clothes at the expiration of his term.   These and all other expenses were to be charged to the lessees.

Subsequently the Legislature ratified this contract of lease, and in the act of ratification authorized the Board of Control to adopt resolutions regarding the health and the religion of the convicts, and required that they should see that the rations of the convicts were not less than those prescribed by the United States army regulations for soldiers, and that the "lessees" furnished the convicts with clothing.

All the expenses were to be charged to the current account of the lessees, and not to the State.

Governor Warmoth, in April, 1870, authorized by Act 56 of 1870, substituted James & Co. to the prior "lessees," and extended the term of the lease to twenty-one years.   The prior lease remained in full force and effect, save that instead of working the penitentiary on joint account, as previously, the lessees should pay five thousand dollars for the first year, and increase the rental one thousand dollars each year during the term of the lease.   Under this contract the lease was for a fixed sum, plus certain payments assumed by the

lessees, to-wit: The salaries of the clerks, the Board of Control and the chaplain. When this lease was about to expire, the Legislature, by Act 114 of 1890, authorized the extension of this lease for a term of ten years, at an annual rental of fifty thousand dollars net, payable in advance.

Agreeably to the terms of this lease, Governor Nicholls entered into a contract with the defendant.

The stipulations and conditions of prior leases were to remain in full force and effect, with the following modifications and changes (the act recites), as provided in Act 114 of 1890.

They were with reference to the character of the work of the convicts—that is, they are to work on levees, railroads and other public works, and further provided for a bond to secure the rental.

In 1878 the lessees had not paid the amount of the rent promptly; differences arose in regard to the amount due. An act requiring the examination of the books was adopted by the Legislature at its session that year and authorizing a settlement. After the examination the rents were paid and no deductions were claimed for the salaries of the Board of Control, chaplains and clerks.

Thereafter the lessees paid annually without setting up any claims for these salaries.

Under the present lease the lessee, James, paid at least one year's rent without objection.

The foregoing is a statement of the facts which led up to the present situation.

The question is as to the meaning of the word "net" in the following phrase, copied from the last contract, in point of date.

"At an annual rental of fifty thousand dollars net, payable in advance."

We have seen that under the contracts preceding the last entered into, the lessees paid rents and certain expenses, among them the salaries of the Board of Control, chaplains and clerk.

In the last contract of lease the word "net" is inserted after the amount fixed for rent.

The plaintiff, through the Attorney General, urges that this word qualified the amount the State is to receive as "net" while the defendant argues that it applies to the expenses that the lessee is to pay, and that under the old contracts the State having received her rental "net" without any deductions for salaries of her officials it

was unnecessary in renewing the lease to add the word "net," if it was intended that the State should receive a fixed sum plus the charges for salaries.

We think it unnecessary; that fact of itself would not have the effect of limiting the obligations of the lessee and of excluding liabilities he assumed in contracts of prior dates.

It may have been inserted under the maxim *abundans cautela non nocet*, without reference to any necessity, or it may have been that it was the intention to specially guard against any claim presented with the view of reducing the amount the State stipulated should be paid.

In any case the intention must be made evident in order that it may be construed as meaning "net" to the lessee and net to the lessor.

It would involve a change of the conditions of contracts which form part of the new contract.

Manifestly, these conditions can not be restrained unless the language of the new act is plain and unambiguous.   The rule of construction of contracts between private individuals is reversed when the grant emanates from the government.   The words used are the grantee's, who sought and obtained the enactment of the statute (American and English Encyclopœdia of Law, Vol. 23, p. 407), and the rule that the grantor is bound to explain himself clearly respecting the extent of his obligations does not apply.

Moreover, the parties to these acts have placed a construction upon them that must be noticed.   During many years they paid these salaries.    The defendant paid the amount of rent the first year under the last contract.

The conditions at the time were of recent date, and performance on the part of the lessee by paying the whole sum is an act we do not feel at liberty to overlook in ascertaining the meaning of the contract.   He had been interested when the last payment was made in a number of similar payments under the old contract. The maxim *contemporanea expositio est fortissima in lege* is not without application.    The inference to be drawn from acquiescence under previous act was confirmed by a payment under the new contract.

The charges had been connected with the administration of the property and the working of the penitentiary; the lessees took charge of the entire plant, consisting of the penitentiary, its ma-

chinery, appurtenances, convicts, and administered it according to law, without the deduction now claimed. Under the modifications of the last contract, which did not refer to the plant at all or to the method adopted for its administration, we are unable to find that the State is liable for salaries and not the lessee. If the latter is not liable there are a number of other expenses that should not be charged.

The rent instead of being fixed as stipulated would be subject to a number of deductions annually.

We think that the penitentiary was leased on condition that the lessee should pay the expenses of administration and that the word "net," as used, applies to the amount of the rent to be paid. It only served to give emphasis to the intention that fifty thousand dollars net should be paid annually.

It is therefore ordered, adjudged and decreed that the judgment appealed from is affirmed at appellants' costs.